UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC DMUCHOWSKY, | Case No. 18-cv-01559-HSG (DMR) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |
| SKY CHEFS, INC., | Re: Dkt. No. 63 |
| Defendant. | |

On March 12, 2018, Plaintiff Eric Dmuchowsky ("Dmuchowsky") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendant Sky Chefs, Inc. ("Sky Chefs"), alleging that Sky Chefs failed to timely provide employee benefit plan documents in violation of ERISA. [Docket No. 1 (Compl.).] Dmuchowsky sought declaratory and monetary relief, including statutory penalties, interest, and attorneys' fees and costs. *Id.* at 4. Sky Chefs produced the documents at issue between April 17, 2018 and July 13, 2018. [Docket No. 34-1 (A.R.) 12-234.] On January 15, 2019, the parties reached a settlement agreement as to Dmuchowsky's penalty claim, but reserved the matter of attorneys' fees and costs for adjudication. [Docket No. 58.] On February 13, 2019, Dmuchowsky filed this motion for attorneys' fees and costs. [Docket No. 63 (Mot.).] The Honorable Haywood S. Gilliam referred the motion to the undersigned for a Report and Recommendation. [Docket No. 66.]

For the following reasons, the court recommends granting Dmuchowsky's motion in part, and awarding $105,795 in fees and $1,619.22 in costs for a total award of $107,414.22.

## I. BACKGROUND

Sky Chefs sponsors and administrates various employee benefits plans governed by ERISA, which provide short term disability benefits, long term disability benefits, life insurance benefits, and health benefits to participants in the plans. Compl. ¶ 4, Docket No. 44 at 4. Dmuchowsky was

employed by Sky Chefs from July 1996 to October 2006. Compl. ¶ 3, Docket No. 42-1 (Supp. A.R.) 239. He was rehired in February 2015, but his employment was terminated in May 2016 because he allegedly violated company policy. Supp. A.R. 241-66, 268-69. Dmuchowsky participated in several employee plans ("Plans") at the time he was terminated, including medical, short-term disability, long-term disability, and life insurance. [Docket No. 10 (Answer) ¶ 7.]

On March 23, 2017, Dmuchowsky made a written request to Sky Chefs for a copy of all employee benefit Plan documents, pursuant to 29 C.F.R. § 2560.503-1(b) and (h)(iv). Compl. ¶ 8; *Id.*, Ex. 1. At that time, Dmuchowsky was gathering information to assist him with submitting a claim for disability-related benefits. [Docket No. 45 at 3.] On December 15, 2017, Dmuchowsky made a second written request to Sky Chefs for the documents. *Id.* ¶ 10; *Id.*, Ex. 2. On December 19, 2017, Sky Chefs issued a written response stating that it had previously responded to Dmuchowsky's first response on April 21, 2017, and that it had denied Dmuchowsky's request for documents at that time. *Id.* ¶ 11; *Id.*, Ex. 3. Dmuchowsky alleges that he did not receive the April 21 response until it was enclosed with Sky Chefs' December 19 correspondence, although Sky Chefs provided a record of mailing that response. *Id.* ¶ 12; *Id.*, Ex. 3. Sky Chefs asserts that it denied Dmuchowsky's request for Plan documents because it had a good faith belief that former employees were not entitled to receive Plan documents. [Docket No. 44 at 5.]

Dmuchowsky was awarded long-term disability benefits prior to filing his complaint. Compl. ¶ 14. On March 12, 2018, Dmuchowsky filed the current lawsuit against Sky Chefs, requesting production of the Plan documents, statutory penalties for the delay in producing the documents, attorneys' fees and costs, and pre- and post-judgment interest. Compl. at 4. Between April 17, 2018 and July 13, 2018, Sky Chefs provided Dmuchowsky with the requested Plan documents. A.R. 12-234.

The parties filed cross-motions for judgment under Rule 52. [Docket No. 43, 44.] Judge Gilliam held a hearing on December 13, 2018. [Docket No. 54.] On January 15, 2019, the parties reached a settlement agreement regarding Dmuchowsky's penalties claim but did not resolve his claim for attorneys' fees and costs. [Docket No. 58.] On February 13, 2019, Dmuchowsky filed this motion for attorneys' fees. The undersigned held a hearing on April 11, 2019.

2

## II. DISCUSSION

### A. *Hardt* Analysis

Section 502(g)(1) of ERISA gives the court discretion to award attorneys' fees. 29 U.S.C. § 1132(g)(1). An ERISA fee claimant must make a threshold showing that he or she has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n. 9 (1983)) (internal quotations omitted). The Ninth Circuit has held that a successful plan participant "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA–IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations and citation omitted). ERISA "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Id.* "[A] fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1)." *Hardt*, 560 U.S. at 253.

Dmuchowsky asserts that he has achieved "some degree of success on the merits" under *Hardt* because Sky Chefs initially refused to provide the Plan documents and only did so "[u]nder the thumb of litigation." Mot. at 2. He also argues that Sky Chefs only agreed to settle his penalty claim once Judge Gilliam indicated that he was going to award penalties and asked the parties to attempt to agree on an amount. Mot. at 3; Transcript of December 13, 2018 Hearing ("Transcript") at 13:6-8 ("Now that you understand that I'm going to impose penalties, can the parties work out a number?"). Dmuchowsky asserts that he is entitled to attorneys' fees and costs because the lawsuit was "the catalyst for Sky Chefs voluntarily changing its conduct" with respect to the substance of the relief he sought. Mot. at 2-3.

The catalyst theory of success "posits that, for purposes of determining an award of attorneys' fees, a plaintiff prevails if he achieves the desired outcome of litigation even if it results

from a voluntary change in the defendant's conduct." *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 963 (N.D. Cal. 2013) (quoting *Kenseth v. Dean Health Plan, Inc.*, 784 F. Supp. 2d 1081, 1094 (W.D. Wis. 2011), *vacated on other grounds*, 722 F.3d 869 (7th Cir. 2013)).  Although there is no mandatory authority directly on point, courts in this district have held that ERISA plaintiffs can recover attorneys' fees on a catalyst theory.  *See Barnes*, 963 F. Supp. 2d at 963-64 ("[T]he catalyst theory remains viable for purposes of § 1132(g)(1)."); *Harrison v. Metro. Life Ins. Co.*, No. 13-cv-05585-VC, 2016 WL 4414851, at *1 (N.D. Cal. June 21, 2016) ("[A]n ERISA plaintiff can recover attorneys' fees on a catalyst theory."); *Tom v. Hartford Life & Accident Ins. Co.*, No. 16-cv-1067-WHA, 2017 WL 6209306 (N.D. Cal. Dec. 8, 2017) (finding that the defendant's decision to approve the plaintiff's claim for continuing benefits was "some degree of success on the merits" because it was "likely precipitated by this lawsuit").  While the Supreme Court rejected the catalyst theory for fee statutes that require a claimant to be a "prevailing party," *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001), the ERISA fee statute does not contain that limitation.  *Hardt*, 560 U.S. at 253.  *Barnes* and *Harrison* distinguish *Buckhannon* on the basis that the court has broader discretion to award attorneys' fees in ERISA cases because a claimant only needs to show "some success on the merits" and does not need to be the "prevailing party."  *Barnes*, 963 F. Supp. 2d at 964; *Harrison*, 2016 WL 44414851, at *1.  "The availability of the [catalyst] theory accords with the broader sweep of the fee-shifting language of § 1132(g)(1)."  *Barnes*, 963 F. Supp. 2d at 964.

Sky Chefs disagrees that the catalyst theory is valid in ERISA cases.  It contends that a claimant cannot recover fees based solely on a defendant voluntarily changing its conduct; rather, there needs to be some judicial determination on the merits of the case.  *See* Docket No. 67 (Opp.) at 4-5 ("Plaintiff should not be awarded attorney's fees because he did not achieve 'some success on the merits' based on a Court order.").  Sky Chefs' cases are not persuasive.

Sky Chefs cites *Hoffman v. American Society for Technion-Israel Institute of Technology, Inc.*, No. 09-cv-2482-BEN, 2014 WL 2767601 (S.D. Cal. July 14, 2014), a case in which a life insurance beneficiary filed an action seeking the payment of life insurance benefits after his wife, the policy holder, died.  2014 WL 2767601 at *1.  The court granted the defendant insurance

company's motion for summary judgment on the basis that the plaintiff failed to exhaust his administrative remedies. *Id.* The plaintiff then formally filed a claim for life insurance benefits and the defendant paid him the benefits he sought. *Id.* Subsequently, the plaintiff filed a motion for attorneys' fees, arguing that he met the *Hardt* standard for success because the lawsuit was a catalyst for the defendant's decision to pay the policy benefits. *Id.* at *2. The court denied the fee motion, determining that the lawsuit (and the fees and costs associated with bringing it) would have been unnecessary if the plaintiff had properly exhausted his administrative remedies. *Id.* at *3. The court concluded that although the plaintiff "ultimately received insurance policy benefits through the administrative process, the Court did not award these benefits nor did the Court favorably decide any legal issue relating to the Plaintiff's eligibility [to] receive these benefits." *Id.* at *4.

Contrary to Sky Chefs' assertion, *Hoffman* did not rely on the lack of a judicial determination as the reason to deny attorneys' fees. *Hoffman* cited *Bryant v. CIGNA Healthcare of California, Inc.*, 540 Fed. App'x 694 (9th Cir. 2013), an unpublished Ninth Circuit decision acknowledging that an ERISA plaintiff may achieve success on the merits if the defendant "paid up only under the cloud of litigation." 540 Fed. App'x at 695. *Hoffman* distinguished *Bryant* on the basis there was no pending litigation at the time that the plaintiff filed his claim with the defendants:

> Plaintiff in this case failed to file a formal claim with Defendant prior to the initiation of litigation. Instead, Plaintiff filed his claim with Defendant *after* Defendant succeeded on its Motion for Summary Judgment. Therefore, Defendant was not "under a cloud of litigation" when it paid policy benefits, distinguishing this case from the award of attorneys' fees in *Bryant v. CIGNA Healthcare of Cal., Inc.,* 540 Fed. App'x 694 (9th Cir. 2013).

*Hoffman*, 2014 WL 2767601, at *4; *see also Bryant*, 540 Fed. App'x at 695. Therefore, *Hoffman* did not reject the catalyst theory; it merely found that it did not apply in that case because the litigation did not causally relate to the plaintiff's receipt of benefits. If anything, *Hoffman*'s citation to *Bryant* supports Dmuchowsky's position that he is entitled to fees because Sky Chefs' decision to produce documents and to pay penalties took place "under a cloud of litigation."

Sky Chefs also cites *Reimann v. Prudential Ins. Co. of Am.*, No. 10-cv-456, 2010 WL 4116743 (E.D. Wis. Oct. 19, 2010) and *Templin v. Indep. Blue Cross*, No. 09-cv-4092, 2011 WL

3664427 (E.D. Pa. Aug. 19, 2011), two unpublished cases outside of this Circuit.[1]  In *Reimann*, an ERISA beneficiary's long-term disability benefits were terminated, and she filed an administrative appeal.  2010 WL 4116743, at *1.  While the appeal was still pending, she filed a complaint in federal district court.  *Id.*  The plaintiff's benefits were reinstated two days after she filed the complaint.  *Id.*  The court denied the motion for attorneys' fees, stating that the court "was never even given the opportunity to make a finding that ERISA's procedure was violated . . . . No merits were ever reached."  *Id.* at *2.  *Reimann*'s reasoning is somewhat ambiguous, as the court also determined that, under a catalyst theory, the plaintiff did not make a showing that the defendant "only made its decision because [the plaintiff] filed suit."  *Id.* at *2.  The court did not engage in a substantive analysis of whether the catalyst theory of recovery survives after *Buckhannon*.  Instead, it seemed to assume that the catalyst theory may apply in some cases, but that the plaintiff did not make the requisite showing of causation in that particular case.  *Id.* ("[T]he suit must be causally linked to the achievement of the relief obtained." (quotations and citations omitted)).  Accordingly, *Reimann* is not persuasive authority that the catalyst theory of fee recovery is not available in ERISA cases.

In *Templin*, two individuals and two pharmacies brought an action against insurance companies challenging a denial of benefits under ERISA.  2011 WL 3664427, at *1.  The defendants moved to dismiss on the basis that the plaintiffs failed to exhaust administrative remedies.  *Id.* at *2.  The court denied the motion and ordered the defendants to review the plaintiffs' claims for benefits.  *Id.*  During the administrative process, the defendants ultimately paid the claims in full and the court dismissed the complaint.  *Id.*  The plaintiffs and the defendants both moved for attorneys' fees.  *Id.*  The court denied the plaintiffs' motion as untimely, but found that they would not be entitled to attorneys' fees in any case because the relief they obtained "was provided by Defendants, not the

_____

[1] Sky Chefs also cites *Binaley v. AT&T Umbrella Benefit Plan No. 1*, No. 11-cv-4722-YGR, 2013 WL 5402236 (N.D. Cal. 2013).  However, *Binaley* relied on pre-*Hardt* cases that use the "prevailing party" standard later abrogated by *Hardt*.  *See Binaley*, 2013 WL 5402236, at *3 (citing *Flom v. Holly Corp.*, 276 Fed. App'x 615, 616 (9th Cir. 2008), *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, No. 08-cv-2560-SI, 2010 WL 330085, at *1 (N.D. Cal. Jan. 20, 2010), *amended by* 2010 WL 1460201 (N.D. Cal. Apr. 12, 2010)).  As the "prevailing party" standard is no longer good law in the ERISA context and requires a higher showing of success by a fee claimant, the court declines to adopt the reasoning in *Binaley*.

Court, and was not achieved by any substantive determination by the Court." *Id.* at *6. The court denied the defendants' motion for fees on other grounds. *Id.* at *9. Sky Chefs cites *Templin* to support its theory that a plaintiff must obtain relief through a judicial determination, not merely through a voluntary change of conduct by the defendant.

However, as Dmuchowsky points out, Sky Chefs omitted the subsequent procedural history of *Templin*. Both sides appealed the respective denials of attorneys' fees, and the Third Circuit affirmed the denial of fees but remanded on the issue of whether the plaintiffs were entitled to interest on the delayed payment of benefits. *Templin v. Indep. Blue Cross*, 487 Fed. App'x 6, 11-15 (3d. Cir. 2012). On remand, the district court held a hearing and observed that the plaintiffs' position regarding interest may be partially correct and allowed the parties additional time to reach a settlement. *Templin v. Indep. Blue Cross*, No. 09-cv-4092, 2013 WL 6050667, at *4-5 (E.D. Pa. Nov. 14, 2013). The defendants agreed to pay some interest to plaintiffs, although the amount was a fraction of what the plaintiffs originally sought. *Id.* at *4-5. The court dismissed the action based on the parties' settlement, and the plaintiffs again filed a motion for attorneys' fees and costs for the work they performed on the issue of interest payments. *Id.* at *5. The district court again noted that it had never made a substantive determination on the merits of the interest issue and that the issue "was settled among the parties outside the courtroom and without a judgment from the court." *Id.* at *8. It also pointed out that the amount of interest the plaintiffs actually received was "trivial" in comparison to the amount they originally sought. *Id.* at *9. The plaintiffs appealed again, and the Third Circuit reversed the denial of attorneys' fees. *Templin v. Indep. Blue Cross*, 785 F.3d 861 (3d Cir. 2015). The Third Circuit explicitly adopted the catalyst theory of ERISA fee awards and rejected the district court's holding that success must come as the result of a judicial determination:

> [T]he Supreme Court's decision in *Hardt* specifically answers the question "how much success" is required for ERISA fee recoveries: "*some* degree of success." Nothing in *Hardt* requires that this success be the result of a judicial decision. Instead, *Hardt* sets out a rather easily traversed threshold. That is to say, under the catalyst theory, a party is eligible for attorney's fees where his or her litigation efforts resulted in a voluntary, non-trivial, and more than procedural victory that is apparent to the court without the need to conduct a lengthy inquiry into whether that success was substantial or occurred on a central issue.

785 F.3d at 866 (internal citation omitted). The Third Circuit pointed out that four other Circuits, including the Second, Fourth, Eleventh, and D.C. Circuits, have also applied the catalyst theory to fee statutes that lack "prevailing party" requirements, and that the Second Circuit did so in the ERISA context. *Id.* at 865 (citing cases). Therefore, the proposition for which Sky Chefs cites *Templin* was explicitly rejected by the Third Circuit. The court finds that those circuit decisions, as well as *Barnes* and *Harrison* in this district, are persuasive, and recommends adopting the catalyst theory of fee recovery in ERISA cases.

Applying the catalyst theory here, Sky Chefs does not dispute that it provided Dmuchowsky the relief he sought only under the pressure of litigation. Prior to the commencement of litigation, Sky Chefs twice denied Dmuchowsky's request for documents. Sky Chefs reversed its position and started producing the documents approximately a month after Dmuchowsky filed his complaint. Further, the parties rigorously litigated the penalty claim and the court held a hearing on the issue after full briefing by the parties. Sky Chefs only settled the penalty claim once Judge Gilliam clearly stated on the record that he was going to award penalties and directed the parties to attempt to agree to an amount. Moreover, even if a judicial determination on the merits were required to establish Dmuchowsky's entitlement to fees, which is not the case, Judge Gilliam made specific findings on the record that would be sufficient to show that Dmuchowsky had "some success on the merits" regarding his penalty claims. *See* Transcript at 5:23-25, 6:1-2 (finding that Sky Chefs "wrongfully withheld production of the records" and "stonewall[ed] the request [for documents]").

At the April 11, 2019 hearing, Sky Chefs argued that Dmuchowsky should not recover attorneys' fees for the time spent litigating the penalty claims because penalties are discretionary and did not provide Dmuchowsky with a substantive form of relief. *See also* Opp. at 5. However, the ERISA fee statute does not distinguish between different types of relief, nor did Sky Chefs cite any cases finding that ERISA precludes fee awards based on penalty claims. *See* 29 U.S.C. § 1132(g) ("In *any* action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." (emphasis added)). Sky Chefs had the opportunity to settle the penalty claims before full briefing and a hearing; it is disingenuous to invite rigorous litigation and then claim that the issue is not

material.

As the Plan documents and penalties are the substance of what Dmuchowsky sought in his complaint, and he obtained that relief as the result of his litigation efforts, the court recommends finding that Dmuchowsky has achieved "some degree of success on the merits" under the *Hardt* standard.

**B.    *Hummell* Test**

Once a court determines that an ERISA fee claimant has met the *Hardt* threshold test, the court must consider the factors set forth in *Hummell v. S.E. Rykoff & Ko.*, 634 F.2d 446 (9th Cir. 1980), to guide its discretion in awarding fees under § 1132(g).   *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119, 1121 (9th Cir. 2010).   In exercising this discretion, district courts should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) (citation omitted).  Courts generally construe the *Hummell* factors in favor of participants in employee benefit plans.  *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans.'") (citation omitted).   "[A] successful ERISA participant should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."   *Id.* (quotations and citation omitted).[2]

---

[2] Sky Chefs cites *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997), which states: "We first disabuse the . . . suggestion that we favor one side or the other in ERISA fee cases.  The statute is clear on its face—the playing field is level."  However, that statement refers to the availability of attorneys' fees and costs to a successful defendant, and is not inconsistent with the remedial purpose of ERISA in favor of participants and beneficiaries.  *See Honolulu Joint*

United States District Court
Northern District of California

### 1. Degree of Defendant's Culpability or Bad Faith

The first *Hummell* factor looks at "the degree of the opposing parties' culpability or bad faith." *Hummell*, 634 F.2d at 453. "Although bad faith is a factor that would always justify an award, it is not required." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984).

Dmuchowsky argues that there is culpability or bad faith because Sky Chefs had the "absolute legal obligation to provide [him] with the documents he requested and failed to do so." Mot. at 5. He cites to the transcript of the hearing held on December 13, 2018, where Judge Gilliam observed:

> But, see, that's not what you said. You didn't say, *Your request is overbroad so can you give us more information.* You didn't say, *You are asking us to do a fishing expedition?* You said, "You're not entitled to it," and that was wrong. And you should just own up.
>
> And when you say it's a misunderstanding, it was wrong for me to think that it is an innocent misunderstanding. It would be helpful to have something in the record that says, *Hey, we checked and here is the advice we got and maybe the advice was wrong*, or *we looked up the wrong section*, or something, but you're not saying that.
>
> So the fact that you wrongfully withheld production of the records based on a misunderstanding of the law doesn't strike me as innocent. They should have figured out whether it was right before they said it, if that was going to be the basis for just stonewalling the request, which is what happened.

Transcript at 5:12-25, 6:1-2 (italics in original).

Sky Chefs asserts that it "neither acted in bad faith nor were its positions objectively without basis." Opp. at 7. It argues that the court should exercise caution in finding bad faith under *Hummell* rather than "an error in [the] application of the law." *Id.* (quoting *Cline v. Indus. Maint. Eng'g Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000)). Sky Chefs also asserts that Dmuchowsky did not suffer prejudice due to the delay in production of documents since he was awarded his long-term disability benefits before he filed the action. *Id.* Finally, Sky Chefs reiterates that the court never issued an order on the merits of the issue that would support a finding of culpability or bad

---

*Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster*, 332 F.3d 1234, 1240 (9th Cir. 2003) ("Our cases are not inconsistent, however. They reflect a recognition of both the remedial purpose of ERISA on behalf of beneficiaries and participants, as well as the clear statutory language that makes fees available to 'either party.'").

faith. *Id.* (citing *Tom v. Hartford Life & Accident Co.*, No. 16-cv-1067-WHA, 2017 WL 6209306, at *11 (N.D. Cal. Dec. 8, 2017)).

As an initial matter, the record is sufficient to support a finding of bad faith. Judge Gilliam found on the record that Sky Chefs "wrongfully withheld production of the records," stonewalled Dmuchowsky's request, failed to conduct research on their legal obligations, and otherwise did not have a good faith basis for withholding the Plan documents. Transcript at 3:4-7, 5:23-25, 6:1-2. Judge Gilliam also determined that Sky Chefs' subsequent explanation for its failure to produce Plan documents was disingenuous:

> But, see, that's not what you said. You didn't say, *Your request is overbroad so can you give us more information.* You didn't say, *You are asking us to do a fishing expedition?* You said, "You're not entitled to it," and that was wrong. And you should just own up.

Transcript at 5:12-16 (italics in original).

Moreover, the first factor is met even without a finding of bad faith. "Although bad faith is a factor that would always justify an award, it is not required." *Smith*, 746 F.2d at 590. For the purposes of this factor, it can be sufficient to show that the defendants were "culpable" in that "they were found to owe [the claimant] a legal duty that they were not fulfilling." *Caplan v. CAN Financial Corp.*, 573 F. Supp. 2d 1244, 1248 (N.D. Cal. Aug. 20, 2008); *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at *4 (N.D. Cal. July 12, 2016) ("[The defendant's] failure to fulfill its legal duty is sufficient to support an award of fees."); *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1126 (N.D. Cal. 2016) ("Bad faith is not required for an award of attorneys' fees or to find a plan culpable." (internal quotations and citations omitted)); *see also Gorbacheva v. Abbott Labs. Extended Disability Plan*, No. 14-cv-02524-EJD, 2018 WL 2387852, at *2 (N.D. Cal. May 25, 2018) (finding culpability where a plan administrator failed to conduct a full review of the plaintiff's claims, even in the absence of evidence of bad faith).

Here, the record establishes culpability. Sky Chefs had an obligation to produce the Plan documents and refused to do so prior to commencement of this litigation. In the initial letter denying Dmuchowsky's request, the Sky Chefs' representative merely stated that Dmuchowsky "is not

currently entitled to such documents under 29 C.F.R. § 2560.503-1(b) and (h)(v)," but provided no further explanation or request for additional information. *See* Compl., Ex. 3; *cf. Barnes*, 963 F. Supp. 2d at 966 (declining to find culpability where the defendant offered "fairly specific" reasons regarding the denial of benefits to the claimant).

In *Hartford*, cited by Sky Chefs, the parties never briefed nor is it apparent that the court had occasion to consider the parties' comparable culpability with respect to the plaintiff's ERISA claims. 2017 WL 6209306. The court merely held the matter in abeyance pending administrative resolution of the plaintiff's claims, and after the administrative appeal resulted in an award of benefits, the court dismissed the action as moot. *Id.* at *1. There was never briefing or a hearing on the merits of the ERISA claim. *See generally id.* In this case, by contrast, the parties fully briefed their Rule 52 motions for judgment and the court held a hearing on the motions after a review of the full record. The court specifically recognized that Sky Chefs' failure to produce documents was not "an innocent misunderstanding," and that Sky Chefs summarily denied the request without attempting to obtain clarifying information from Dmuchowsky. Judge Gilliam also indicated that he was going to award penalties,[3] although he allowed the parties the opportunity to settle the matter without a judicial order.

Accordingly, the first factor weighs in favor of granting attorneys' fees and cost.

### 2. Defendant's Ability to Satisfy an Award of Fees

The parties do not dispute that Sky Chefs has the ability to pay an award of fees. "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 590. Sky Chefs asserts that there are "special circumstances" in this case because Dmuchowsky obtained a settlement agreement on a discretionary penalty award for a "mere procedural violation" rather than any award of benefits. Opp. at 8. Sky Chefs also argues that the delayed production of documents did not harm Dmuchowsky because he ultimately obtained long-term disability benefits. *Id.* However, Sky

---

[3] Notably, the penalty analysis also requires an assessment of the administrator's "bad faith or intentional conduct." *See Graeber v. Hewlett Packard Income Protection Plan*, 282 Fed. App'x. 679, 681 (9th Cir. 2008).

Chefs cites no cases supporting that these factors are "special circumstances" that warrant denying attorneys' fees.

Sky Chefs further urges the court to look at the relative ability of the parties to satisfy an award of fees, and states that Sky Chefs' "ability to pay the fees would only be sufficient evidence if it was clear that Plaintiff was entirely unable to pay. Plaintiff does not claim that he is unable to pay." Opp. at 9 (quoting *Smith*, 746 F.2d at 590). However, *Smith*'s discussion of this factor explains in depth why a successful ERISA plaintiff should ordinarily be granted fees:

> Not to award counsel fees in cases such as this would be tantamount to repealing [ERISA] itself by frustrating its basic purpose. It is difficult for individual members of labor unions to stand up and fight those who are in charge. The latter have the treasury of the union at their command and the paid union counsel at their beck and call while the member is on his own.... An individual union member could not carry such a heavy financial burden. Without counsel fees the grant of federal jurisdiction is but a gesture for few union members could avail themselves of it.

*Smith*, 746 F.2d at 590 (quoting *Hall v. Cole*, 412 U.S. 1, 13 (1973)). There is no indication in *Smith* that the court should inquire into the *plaintiff*'s ability to pay fees; rather, *Smith* highlights the importance of facilitating access to the courts for individual plan participants. More fundamentally, the *Hummell* test specifically mentions only the defendant's ability to pay an award of fees.

This factor weighs in favor of granting attorneys' fees.

### 3. Degree to Which an Award Will Deter Future Conduct

The third *Hummell* factor looks at the possible deterrence effect of a fee award. *Hummell*, 634 F.2d at 453. "[C]ourts acknowledge that an award of attorneys' fees and costs is a way of deterring violations of ERISA." *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at *4 (N.D. Cal. July 12, 2016) (citing *Caplan v. CAN Financial Corp.*, 573 F. Supp. 2d 1244, 1248 (N.D. Cal. Aug. 20, 2008)). Dmuchowsky argues that Sky Chefs was ignorant of its obligation to provide Plan documents to former employees who participated in those Plans, and that an award of attorneys' fees will deter Sky Chefs from "wrongfully refusing to provide Plan documents in the future." Mot. at 7. Sky Chefs contends that a fee award would not produce a deterrent effect that "would be appreciably greater than the payment of the settlement itself." Opp. at 9 (citing *Hart v. Unum Life Ins. Co. of Am.*, No. 15-cv-5392, 2017 WL 4418680 (N.D. Cal. Oct.

4, 2017)).  Sky Chefs also asserts that awarding fees is not likely to have a deterrent effect because there is no evidence of bad faith.  Opp. at 10 (citing *Gorbacheva v. Abbott Laboratories Extended Disability Plan*, No. 14-cv-2524, 2018 WL 2387852 (N.D. Cal. May 25, 2018)).

In *Hart*, the court found the deterrence factor neutral where the plaintiff did not show how a "generic deterrence effect . . . would be appreciably greater than in any ERISA action that results in an adverse judgment against insurers."  2017 WL 4418680 at *4.  However, that case did not cite to any authority that an ERISA plaintiff must show that the deterrent effect of an adverse judgment is insufficient.  Even if the court adopted the reasoning in *Hart*, Dmuchowsky has shown a specific deterrent effect in this case in that Sky Chefs had an incorrect belief about the application of ERISA procedures with respect to providing Plan documents to former employees, and an award of fees will deter similar ERISA violations in the future.  *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *8 (N.D. Cal. Aug. 25, 2017) (finding an award of fees combined with a change in the defendant's practices has a deterrent effect).

*Gorbacheva*, also cited by Sky Chefs, is not persuasive.[4]  In evaluating the third *Hummell* factor, *Gorbacheva* concluded that "[t]here is no evidence of bad faith and therefore, an award of fees is not likely to have a deterrent effect."  2018 WL 2387852 at *2.  However, the first *Hummell* factor already requires an examination of the opposing party's degree of culpability or bad faith, and making the third factor rest solely on that determination is redundant.  Here, Dmuchowsky has shown that an award of fees will likely deter Sky Chefs and others from wrongfully withholding Plan documents from former employees or making representations without diligently investigating their legal obligations.  *See O'Rourke v. Farmers Grp. Inc. Transitional Supplemental Exec. Ret. Plan*, No. 17-cv-279-JVS, 2018 WL 4810791, at *2 (C.D. Cal. Aug. 14, 2018) (finding that, even in absence of bad faith, an award of attorneys' fees would deter the defendant and other plan administrators from "making representations to participants without ensuring the accuracy of the information provided").  In addition, as detailed above, the record in this case is sufficient to support a finding of bad faith.

---

[4] Notably, both cases cited by Sky Chefs ultimately awarded fees based on the other *Hummell* factors.  *Id.* at *2; *Hart*, 2017 WL 4418680, at *4.

14

This factor weighs in favor of granting fees.

### 4. Benefit to Other Participants or Significance of Legal Issue

The fourth *Hummell* factor looks at "whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA." *Hummell*, 634 F.2d at 453. Dmuchowsky admits that he did not seek benefits on behalf of other plan participants or for the plan as a whole. Mot. at 7. However, he asserts that his case "should have established that Sky Chefs must provide Plan documents to eligible Plan participants, even when they are former employees," and this determination may benefit a large number of people uninvolved in the particulars of this case. *Id.* Sky Chefs asserts that Dmuchowsky did not obtain any result that would be legally binding on Sky Chefs, and that the particulars of this case are too individual to provide much impact in other cases. Opp. at. 10-11.

"A successful suit to enforce ERISA will generally benefit the plan's participants." *Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984). At the hearing on April 11, 2019, Dmuchowsky argued that most participants who request Plan documents are former employees, so an award of fees in this case could benefit a substantial number of other participants. However, Dmuchowsky also asserted that the ERISA statute is "clear" that plan administrators are required to produce documents to former employees, which cuts against this case resolving a significant legal issue. *See Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984) (finding that "when the positions of both parties have some merit . . . a decision clarifying the terms of a plan after litigation would benefit all participants and beneficiaries by settling a disputed provision or an ambiguity" (internal quotation marks omitted)).

This factor is neutral.

### 5. Relative Merits of the Parties' Positions

"[T]he relative merits of the parties' positions, is, in the final analysis, the result obtained by the plaintiff." *Smith*, 746 F.2d at 590. An ERISA plaintiff satisfies this requirement when he "receives what he . . . sued for by way of voluntary settlement." *Id.* Sky Chefs merely reiterates the arguments it raised previously that Dmuchowsky did not achieve "some degree of success on the merits." Opp. at 11-12. As discussed in detail above, Dmuchowsky has obtained through his

15

litigation efforts and settlement "virtually all of the relief he could have obtained at trial." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *9 (N.D. Cal. Aug. 25, 2017) (internal quotations omitted). Accordingly, this factor weighs in favor of granting attorneys' fees.

In sum, particularly in light of the Ninth Circuit's direction that successful ERISA plaintiffs "should ordinarily recover attorney's fees," the court recommends finding that Dmuchowsky has satisfied the *Hummell* factors and is entitled to an award of attorneys' fees and costs under section 1132(g)(1).

## C. Reasonableness of Fees

"To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co.*, 480 F. 3d 942, 945 (9th Cir. 2007). First, "[t]he lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "The party seeking fees bears the initial burden of establishing the hours expended litigating the case, and must provide detailed time records documenting the tasks completed and the amount of time spent." *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at *5 (N.D. Cal. July 12, 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and *Welch*, 480 F.3d at 945-46). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch*, 480 F.3d at 946 (quoting *Hensley*, 461 U.S. at 434). "Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Id.*

### 1. Hourly Rates

The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence— in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing

16

in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896, n. 11. Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community as well as rate determinations in other cases can provide evidence of the prevailing market rate. *Welch*, 480 F.3d at 947 (citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Phelps Dodge Corp.*, 896 F.2d at 407.

### a.    Attorney Brent Brehm

Dmuchowsky seeks an hourly rate of $650 per hour for the time Brent Brehm billed as a senior associate and $750 per hour for the time he billed after becoming a partner in late 2018. Mot. at 9. Brehm graduated from Rutgers Law School in 2006. [Docket No. 63-2 ("Brehm Decl.") ¶ 4.] After passing the California bar exam that same year, he joined his current firm, Kantor & Kantor, where the focus of his practice has been disability insurance litigation. *Id.* ¶ 10. He has handled both ERISA and bad faith disability insurance claims under California law. *Id.* He estimates that he has handled over 250 ERISA and California law governed insurance matters throughout his career, including appeals to the Ninth Circuit. *Id.* ¶ 11. He was named as a "Rising Star" by *Super Lawyers* in 2014, 2015, and 2016, and as a "Super Lawyer" in 2017 and 2018. *Id.* ¶ 17-20. In December 2018, he became a partner at Kantor & Kantor. *Id.* ¶ 21.

Dmuchowsky submitted declarations from other ERISA attorneys in support of Brehm's hourly rates. Attorney Robert McKennon has been practicing for over 30 years and has spent most of that time litigating bad faith disability insurance claims and ERISA cases. Brehm Decl., Ex. 4 ("McKennon Decl.") ¶ 2. He states that his firm has charged $700 per hour to clients they bill on an hourly basis since 2016, and that his current hourly rate is $750 per hour. *Id.* ¶ 8. He testifies that he is familiar with Brehm's reputation and skills as an ERISA attorney and that Brehm's rate of $750 per hour partner rate is in accord with the prevailing market rates for ERISA litigation. *Id.* ¶ 9. Attorney Brian Kim was admitted to the bar in 2001, and has specialized in ERISA matters since 2007. Brehm Decl., Ex. 5 ("Kim Decl.") ¶¶ 2-3. He testifies that Kantor & Kantor is one of the preeminent law firms in the country representing plaintiffs in ERISA matters, and that based on his ten-year professional relationship with Brehm, he believes that Brehm's partner rate of $750 is

reasonable for his practice of ERISA law in California. *Id.* ¶ 8. He also states that his own rate is "at least" $750 per hour. *Id.* Attached to Brehm's declaration are also court orders awarding him up to $650 per hour as recently as 2018 (before he was a partner). Brehm Decl., Ex. 6.

At the hearing, the court asked Brehm to support his rate increase of $100 per hour in one year. Brehm represented that there are six other partners in his firm, of which he is the most junior in terms of the number of years spent practicing. Brehm stated that the four senior partners in his firm now charge $800 per hour to clients who pay hourly but to his knowledge the senior partners have not been awarded those rates by a court. Brehm also represented that the other two partners, both of which have been practicing longer than he has, charge $750 per hour but neither had been awarded this amount. Brehm stated that he had billed $800 per hour for one client this year and expects to be paid that amount. He acknowledged that his rate of $750 per hour has not been approved by any court.

An overview of ERISA cases in California does not support an award of $750 per hour for an ERISA attorney with 13 years' litigation experience. *James v. AT&T W. Disability Benefits Program*, No. 12-cv-06318-WHO, 2014 WL 7272983, at *4 (N.D. Cal. Dec. 22, 2014) (awarding $650 per hour for an attorney with 36 years' litigation experience); *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 996 (N.D. Cal. 2014) (awarding $650 per hour for a lead counsel with 18 years' experience); *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1127 (N.D. Cal. 2016) (awarding $600 per hour to a partner whose rate was not contested by the defendant); *Gurasich v. IBM Ret. Plan*, No. 14-cv-02911-DMR, 2016 WL 3683044, at *7 (N.D. Cal. July 12, 2016) (awarding $650 for lead counsel with 24 years' experience); *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *10 (N.D. Cal. Aug. 25, 2017) (awarding $700 per hour to Glenn Kantor, a senior partner in Brehm's firm); *Gorbacheva v. Abbott Labs. Extended Disability Plan*, No. 14-cv-02524-EJD, 2018 WL 2387852, at *3 (N.D. Cal. May 25, 2018) (awarding $700 per hour to a partner). A decision issued in January 2019 awarded Glenn Kantor, who has over 30 years' total experience, $700 per hour. *Dowdy v. Metro. Life Ins. Co.*, No. 15-cv-03764-JST, 2019 WL 120730, at *5 (N.D. Cal. Jan. 7, 2019). In only one case cited by Dmuchowsky did a court award an amount equal to or greater than the amount he is requesting for

his partner rate. *Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 16-cv-01413-JD, 2018 WL 6726963, at *1 (N.D. Cal. Dec. 22, 2018) (awarding $900 per hour for the partner on the case). However, the experience of that attorney is not detailed in that order and the amount appears to be an outlier.

The court recommends awarding Brehm $650 per hour for the time he billed prior to obtaining partnership, and $700 per hour for the hours he has billed since that time.[5] These amounts are in line with the cases cited above for an attorney with his experience.

### b.        Attorney Monica Lienke

Dmuchowsky requests an hourly rate of $400 per hour for Monica Lienke.  Mot. at 11. Lienke graduated from Stanford Law School and was admitted to practice law in California in December 2014.   [Docket No. 63-3 ("Lienke Decl.") ¶ 5.]   She joined Kantor & Kantor approximately three years ago and her primary practice area since that time has been ERISA disability and life insurance appeals and litigation. *Id.* ¶¶ 5-6. Sky Chefs claims that her hourly rate of $400 per hour is unreasonable for a "junior attorney [who is] new to Plaintiff's counsel's firm," but does not cite any evidence or caselaw rebutting the reasonableness of the amount.   The court concludes that the requested rate of $400 per hour is reasonable.  *See Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*, No. 11-cv-1699-CW, 2013 WL 2297037, at *4 (N.D. Cal. May 24, 2013) (awarding between $300 and $400 per hour for associates).

Accordingly, the court recommends awarding $400 per hour for Lienke's time.

### 2.        Time Entries and Total Time Billed

In granting a fee award, the court must explain how it arrived at the amount. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The explanation does not need to be elaborate; rather, it "must be concise but clear." *Id.*  (citing *Hensley*, 461 U.S. at 437). "Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Id.*  The party seeking the award of fees bears the burden of submitting time

---

[5] Brehm billed his associate rate through December 13, 2018, and his partner rate for all hours expended after that.

United States District Court
Northern District of California

records detailing the hours spent; courts may reduce the award where the records do not justify the hours spent. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Courts also have discretion to reduce the amount of hours billed in the event that entries are block-billed, as a court will be unable to determine whether all time in the entry was reasonably expended, and for duplicative or unnecessary work. *Mendez v. Cty. of San Bernadino*, 540 F.3d 1109, 1128–29 (9th Cir. 2008); *see also Day v. AT & T Disability Income Plan*, 608 Fed. App'x 454, 457 (9th Cir. 2015) (affirming reduction in fees where counsel spent an excessive amount of time on tasks compared to time spent on similar tasks by prior counsel and attorneys in other ERISA cases, used block-billing to record his time, and charged his other clients a lower hourly rate than the lodestar rate he requested).

In this case, the parties appeared for an initial case management conference, engaged in mediation, briefed and argued their Rule 52 cross-motions for judgment, and litigated the current motion for fees [Docket Nos. 29, 40, 44, 45, 46, 54, 63, 67, 71.] The parties also submitted one discovery matter for resolution by the court, which was referred to Magistrate Judge Kandis Westmore. [Docket Nos. 32, 33, 35.] However, Judge Westmore terminated the matter as the parties' briefing did not comply with her standing order and the parties did not resubmit the matter. [Docket No. 36.] Dmuchowsky claims a total of 185.1 hours for a fee award of $115,635.00. [Docket No. 71-1.]

Only Brehm and Lienke billed time for this case, and most of the hours claimed (149.3 out of 185.1) are for Brehm. These hours include the time Brehm spent drafting most of the filings in the case. Sky Chefs argues that a more junior attorney or an associate should have drafted the filings for a senior attorney's review. Brehm explained at the hearing that he was the associate on the case when it was assigned (he became a partner during the latter part of the litigation), and the senior attorney on the case was Glenn Kantor, with whom Brehm conferred regarding litigation strategy. The time sheets show that Brehm spent 3.6 hours conferring with Kantor about the case, which supports Brehm's assertion that he was the more junior attorney assigned to the case. Sky Chefs separately argues that the hours Kantor and Brehm spent conferring are inappropriate based on Brehm's representations about his own expertise in ERISA matters, and that he should not have

20

needed to consult a more senior attorney. However, the 3.6 hours Brehm spent conferring with Kantor is minimal. In addition, the firm could have billed for both attorneys' time, but Kantor is not seeking compensation for the time he spent conferring with Brehm. It appears to the court that Brehm exercised reasonable billing judgment for the modest number of hours he spent conferring with the senior attorney on the case, and that the delegation of responsibility was appropriate.

Sky Chefs further contends that the time Brehm spent drafting some of the filings was exorbitant. It points specifically to the motion for attorneys' fees, for which Brehm billed 6.1 hours,[6] and argues that the time is excessive given that the motion is "essentially the same" as other fee motions Brehm has submitted in ERISA cases. Opp. at 18. Brehm acknowledged that much of the text of the moving papers has been used in other cases, and explained that the relative ease of the motion is accounted for by the difference between the time billed drafting this motion and the time spent drafting the other filings in the case. As a comparison, Brehm spent 10.8 hours drafting the moving papers for the Rule 52 motion, 25.1 hours drafting the Rule 52 response, and 14.5 hours drafting the reply brief for the fee motion. It appears that the time requested for the moving papers on the fee motion adequately accounts for the relative ease of drafting those papers based on pre-existing templates. Accordingly, the court does not find it appropriate to reduce the hours billed for the fee motion.

Sky Chefs argues that Dmuchowsky inappropriately claims fees for hours spent on clerical and administrative tasks, such as the time he spent reviewing his own ECF filings and directing his assistants or paralegals in administrative tasks. Brehm billed 1.7 hours for the time he spent reviewing the ECF filings made by his own office. At the April 11, 2019 hearing, Brehm explained that he always reviewed the filings made by his office to ensure they are correct. While the court does not discourage this practice, it is not reasonable to charge Sky Chefs for ensuring that Dmuchowsky's filings are correct. Accordingly, the court recommends deducting 1.7 hours from the total. Brehm also billed 0.6 hours for directing assistants in various clerical tasks, such as ordering transcripts. These are not matters that required a partner's time and the court recommends

---

[6] Both parties state that Brehm spent 5.1 hours drafting the motion for attorneys' fees, referring to the time entry dated 2/13/19; however, Brehm billed an additional hour for the motion on 2/12/19.

deducting 0.6 hours from the total for these entries.

Sky Chefs objects to all the hours billed by Lienke, arguing that she was "thrown in during the middle of the case" and it took her more time to learn the case and prepare than if Brehm had performed her tasks. Lienke billed 35.4 hours in a time period of approximately one month between November and December 2018. At the hearing, Brehm represented that Lienke's only role in the case was to argue the Rule 52 motion. He stated that the firm wanted to give a junior attorney experience in oral argument. While Kantor & Kantor's efforts to train junior attorneys are commendable, the training of junior attorneys is not a cost that the opposing party should bear. Further, there is nothing in the record that indicates that Lienke exercised billing judgment to account for the additional time she spent learning the case when an attorney more familiar with the case would have required less preparation time. Lienke spent 5.5 hours on the hearing date[7] reviewing and preparing for the hearing, travelling to the courthouse, conferring with Brehm on strategy, and attending the hearing. These hours are appropriate and compensable. The vast majority of the other 29.9 hours are for reading the case file, reviewing discovery, reading cases, practicing and mooting oral argument, and drafting hearing outlines. Given that an attorney more familiar with the case would have needed less time to prepare for the hearing, the court recommends awarding 15 hours of preparation time for a total award of 20.5 hours for Lienke's time.

In sum, the court awarding Brehm 104.7 hours at a rate of $650 per hour for a total of $68,055 for the time he spent litigating this case as an associate, and 42.2 hours at a rate of $700 per hour for a total of $29,540 for his time billed as a partner. The court further recommends awarding Lienke 20.5 hours at a rate of $400 per hour for a total of $8,200. The total fees the court recommends awarding amounts to $105,795.

### 3. Costs

Dmuchowsky also seeks an award of $1,619.22 in costs. Mot. at 12; Brehm Decl., Ex. 2. The billing statement he included records $5,661.39 in costs. Brehm Decl., Ex. 2. Dmuchowsky

---

[7] The records indicate that Lienke billed for the court hearing on December 4, 2018, which was not a hearing date. At the April 11, 2019 hearing, Brehm clarified that this time was expended for the December 13, 2018 hearing.

does not explain which of these entries he is seeking costs for; however, it is clear from reviewing the statements that the compensable costs are at least the amount requested. Further, Sky Chefs does not contest the request for costs. Accordingly, the court recommends awarding Dmuchowsky $1,619.22 in costs.

## III. CONCLUSION

For the reasons stated above, the court recommends granting in part Dmuchowsky's motion and awarding $105,795 in fees and $1,619.22 in costs for a total award of $107,414.22.

Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: May 1, 2019



_____
Donna M. Ryu
United States Magistrate Judge